UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BENJAMIN RICHARDSON,

                       Plaintiff,

    -against-

WESTCHESTER COUNTY, WESTCHESTER
COUNTY DEPARTMENT OF CORRECTION,
COMMISSIONER JOSEPH K. SPANO, CAPTAIN
JOHN DOE 1, CORRECT CARE SOLUTIONS,
LLC, and NURSE KARA BROWN.,

                    Defendants.

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: ___03/15/2022___

No. 20 Civ. 5907 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

       Plaintiff Benjamin Richardson, a former inmate at the Westchester County Jail Facility (the "Jail"), brings this action against Defendants Westchester County ("WC"), the Westchester County Department of Corrections ("DOC"), Commissioner Joseph K. Spano, Captain John Doe 1, Correct Care Solutions, LLC ("CCS") (collectively, the "County Defendants"), and Nurse Kara Brown, under 42 U.S.C. §§ 1983, 1985, and 1988, for violations of his constitutional rights under federal and state law. Specifically, Plaintiff alleges that Brown sexually abused him while CCS employed her as a nurse to provide medical services to the inmates at the Jail. (Compl. at 2–30, ECF No. 1.) He alleges Brown demanded him to have sexual relations with her, threatening to tell Jail personnel and her "powerful father" that he raped and sexually assaulted her if he refused. (*Id.*) Presently pending before the Court is the County Defendants' motion to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 34.)[1] For the following reasons, the Court GRANTS the County Defendants' motion to dismiss.

---

[1] While Brown is yet to be served, the County Defendants also move to dismiss the claims against her because her alleged sexual abuse of Plaintiff is the independent constitutional violation on which his § 1983 claims against the County Defendants are premised. Further, counsel for the County Defendants represent that should Brown be served, they anticipate representing her as well unless she chooses to retain counsel. (ECF No. 27.)

**BACKGROUND**

## I.  Factual Background

The following facts are derived from the Complaint and are taken as true and constructed in the light most favorable to Plaintiff for the purposes of this motion.

From August 17 to October 13, 2017, while he was an inmate at the Jail, Plaintiff worked as a porter for the DOC. (Compl. ¶¶ 12, 42, 45.) Brown, a medical nurse employed by CCS (a private contractor employed by WC, DOC, and Spano, to provide medical services at the Jail), was assigned to the Medical Post on the second floor of the new construction side of the Jail. (*Id.* ¶¶ 15–17, 43.)

Brown would seek out Plaintiff while he was performing his porter duties, asking him to come to areas not subject to camera surveillance and demanding him to perform oral sex, sexual intercourse, and other sexual acts with her. (*Id.* ¶¶ 46–48.) Plaintiff continuously begged Brown to stop engaging with him and to leave him alone, but Brown threatened to tell Jail personnel and her "powerful father" that he raped and sexually assaulted her if he refused. (*Id.* ¶¶ 49–50.) Brown would tell Plaintiff that no one would believe he was the victim. (*Id.* ¶ 50.) Out of fear, Plaintiff complied Brown's demands. (*Id.* ¶ 51.)

On October 13, 2017, during the daytime hours, while Plaintiff performed his duties of porter by stripping the floors of the Jail's Staff Room, Brown entered the room, barricaded the door from the inside, and approached Plaintiff. (*Id.* ¶ 54.) Brown demanded Plaintiff to have sexual intercourse with her, but Plaintiff refused. (*Id.* ¶ 55.) Brown threatened Plaintiff and began touching his private parts and undressing herself. (*Id.* ¶¶ 55–56.) DOC Sergeant Deltresse began knocking on the Staff Room's door and then forced the door open. (*Id.* ¶¶ 58–59.) Upon Sergeant Deltresse entering the Staff Room, Brown had redressed herself. (*Id.* ¶ 60.) Sergeant Deltresse then

approached DOC Correction Officer Levi and demanded to know why Brown was alone with Plaintiff. (*Id.* ¶ 61.)  Brown then returned to her medical post. (*Id.* ¶ 62.)

Sometime later, Plaintiff learned that Brown was terminated. (*Id.* ¶ 66.) Feeling safe to tell the truth, Plaintiff reported Brown's sexual abuse in a letter to DOC officials. (*Id.* ¶ 68.)

## II.  Procedural Background

On July 29, 2020, Plaintiff filed the instant Complaint (Compl., ECF No. 1.) The next day, the County Defendants were served with the Complaint and summons. (ECF Nos. 14–16.)[2] On August 24, 2020, the County Defendants sought leave to file a motion to dismiss, which the Court subsequently granted and issued a briefing schedule. (ECF Nos. 25 & 28.) On March 26, 2021, the parties filed their respective briefing on the instant motion: the County Defendants their notice of motion (ECF No. 34), memorandum in support ("Motion," ECF No. 36), a declaration with accompanying exhibits (Cossu Decl., ECF No. 35), and reply ("Reply," ECF No. 37); and Plaintiff his response in opposition ("Response in Opposition," ECF No. 39) and an accompanying declaration (Radlin Decl., ECF No. 38.)

## LEGAL STANDARD

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Freidus v. Barclays Bank PLC,* 734 F.3d 132, 137 (2d Cir. 2013). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" or "formulaic

---

[2] As noted above, the docket shows that Brown has yet to be served with the summons and Complaint. However, counsel for the County Defendants represent that should Brown be served, it anticipates representing her as well unless she chooses to retain counsel. (ECF No. 27.)

recitation[s] of the elements of a cause of action will not do"; rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In applying these principles, the Court may consider facts alleged in the complaint and documents attached to it or incorporated by reference. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (internal quotation marks and citation omitted).

## DISCUSSION

Plaintiff asserts claims against Brown for (1) violation of his Eighth Amendment right to be free from cruel and unusual punishment; (2) violation of his Fourth Amendment right to be free from excessive force and unlawful seizure; and (3) retaliation for exercising his First Amendment right to report her. (*See* Compl. at 12–15, 20–21.) Plaintiff also asserts claims—premised on Brown's alleged violation of his constitutional rights—against the County Defendants for (1) failure to intervene; (2) violation of his Fourteenth Amendment right to Substantive Due Process; (3) supervisory liability; (4) conspiracy under § 1985(3);[3] and (8) failure to enact policies or safeguards to protect his constitutional rights under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). (*See* Compl. at 15–20, 21–30.)

The County Defendants seek to dismiss all claims arguing that: (1) the DOC is not a suable entity; (2) Plaintiff's state law claims are time barred; and (3) Plaintiff failed to state a claim against all Defendants under 42 U.S.C. §§ 1983, 1985, and 1988 because he fails to plausibly allege that Brown acted under color of law. (*See* Mot. at 9–30.) The Court analyzes the County Defendants' arguments in that order.

---

[3] None of the allegations in Plaintiff's Complaint seem to invoke § 1985(1) and (2) because they relate to conspiracy claims to prevent officers from performing their duties and to obstruct judicial proceedings by intimidating a party, witness, or juror.

4

## I.   The DOC is not a suable entity

As a preliminary matter, the Court agrees with the County Defendants that all claims against the DOC must be dismissed because city agencies or departments do not have the capacity to be sued under New York law. *See Omnipoint Commc'ns, Inc. v. Town of LaGrange*, 658 F. Supp. 2d 539, 552 (S.D.N.Y. 2009) ("In New York, agencies of a municipality are not suable entities."); *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002) ("Under New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot sue or be sued."); *see also* N.Y. Gen. Mun. Law § 2 ("The term 'municipal corporation,' as used in this chapter, includes only a county, town, city and village."). Accordingly, the Court dismisses all claims against the DOC with prejudice and terminates it as a party to this action.

## II.   Plaintiff's state law claims against the County Defendants are time-barred

In his Complaint, Plaintiff invokes the pendent jurisdiction of this Court to consider his claims asserted under New York state law. (Compl. ¶ 4; *see also id.* ¶¶ 1, 73 (purporting to assert claims under state law).) However, nowhere in the Complaint does Plaintiff explicitly assert a claim under state law; instead, his Complaint consists entirely of causes of action asserted under federal law. (*See, e.g.*, Compl. at 12, 14–17, 19–21.) Nonetheless, to the extent that Plaintiff asserts state law claims against the County Defendants, the Court agrees with them that any such claims are time-barred.

Under New York law, a notice of claim is a condition precedent to bringing personal injury actions against municipal corporations. *See* N.Y. Gen. Mun. Law § 50–e; *Fincher v. Cnty. Of Westchester,* 979 F. Supp. 989, 1002 (S.D.N.Y. 1997); *O'Brien v. City of Syracuse,* 54 N.Y.2d 353, 358 (1981). The notice of claim must set forth, *inter alia,* the nature of the claim, and must be filed within ninety days of when the claim arises. *See* N.Y. Gen. Mun. Law § 50–e.

5

Additionally, any such action must be commenced "within one year and ninety days after the happening of the event upon which the claim is based[.]" N.Y. Gen. Mun. Law § 50–i.

Here, Plaintiff alleges that the last event upon which his claims are based occurred on October 13, 2017. (Compl. ¶ 54.) Hence, Plaintiff should have served a notice of claim by January 11, 2017 (ninety days after the claims arose under N.Y. Gen. Mun. Law § 50–e.), and file the instant action by January 11, 2019 (one year and ninety days after October 13, 2017, under N.Y. Gen. Mun. Law § 50–i). Yet, neither does Plaintiff aver anywhere in the Complaint that he filed a notice of claim under § 50–e, and even if he did, he brought this action until July 29, 2020—over eighteen months after § 50–i's statutory limitations period expired.

In opposition, Plaintiff relies on *Felder v. Casey*, 487 U.S. 131 (1988), in arguing that New York's notice-of-claim requirement and the related limitations period do not apply to his claims asserted under 42 U.S.C. § 1983. (Resp. in Opp'n at 4.) While Plaintiff is correct that such state law requirements do not apply to his federal law claims, these requirements nonetheless apply to his *state law* claims. Indeed, the Supreme Court in *Felder* explicitly noted the same: "federal courts entertaining state-law claims against . . . municipalities are obligated to apply the [state] notice-of-claim provision." *Felder v. Casey*, 487 U.S. 131, 151 (1988). Accordingly, the Court dismisses all of Plaintiff's state law claims against the County Defendants.

### III. Plaintiff fails to state a claim under §§ 1985(3) and 1988 against all Defendants

In his Complaint, Plaintiff also purports to assert claims under §§ 1985(3) and 1988. But Plaintiff's allegations fail to state a claim under either of these two sections. (*See* Compl. ¶¶ 1–2, 117–124.)

To begin, section 1985(3) "is applicable only if the plaintiff can show that some racial, or perhaps otherwise class-based, invidiously discriminatory animus lay behind the conspirators' action." *Weiss v. Violet Realty, Inc.*, 160 F. App'x 119, 119 (2d Cir. 2005) (quoting *See LeBlanc-*

6

*Sternberg v. Fletcher,* 67 F.3d 412, 426–27 (2d Cir. 1995)). "The Supreme Court added a 'class-based animus' requirement to § 1985(3) to prevent it from being broadly, and erroneously, interpreted as providing a federal remedy for 'all tortious, conspiratorial interferences with the rights of others.;" *Malsh v. Austin*, 901 F. Supp. 757, 764 (S.D.N.Y. 1995) (quoting *See Jews for Jesus, Inc. v. Jewish Community Relations Council of New York, Inc.,* 968 F.2d 286, 291 (2d Cir. 1992)).

However, "Plaintiff nowhere alleges [in his Complaint] that he was a victim of a conspiracy due to his membership in some protected class." *Id.* All that Plaintiff alleges is that Defendants allegedly targeted him and other inmates "for the purpose of sexually abusing and exploiting them" because they were vulnerable while in custody. (Compl. at 19). Even to the extent Plaintiff alleges that Defendants conspired to violate his rights motivated by an invidious discriminatory animus against his status as an inmate, his claims would still fail because inmates are not a protected class under § 1985. *See Cusamano v. Sobek*, 604 F. Supp. 2d 416, 433 n.26 (N.D.N.Y. 2009) (citing cases).

And moreover, section 1988 "does not provide an independent cause of action." *Id.* at 120 (citing *Valley Disposal, Inc. v. Cent. Vt. Solid Waste Mgmt. Dist.,* 71 F.3d 1053, 1057 (2d Cir. 1995) ("'[A] request for attorney's fees under § 1988 raises legal issues collateral to the main cause of action.'" (quoting *White v. N.H. Dep't of Employment Sec.,* 455 U.S. 445, 451 (1982))).

Accordingly, the Court dismisses all of Plaintiff's claims against Defendants under both §§ 1985(3) and 1988.

### IV. Plaintiff fails to state a claim under § 1983 against all Defendants

The County Defendants next argue that Plaintiff fails to state a claim against them *and* Brown under § 1983. The County Defendants first contend that all of Plaintiff's § 1983 claims fail because he fails to plausibly plead that Brown acted as a state actor for purposes of § 1983 liability.

(Mot. at 13–17.) Alternatively, the County Defendants contend that Plaintiff still fails to state a claim against Brown and against them because he conclusorily alleges that they (1) were deliberately indifferent to Brown's actions and his well-being, and (2) failed to intervene or enact a policy or custom to prevent the violation of his rights. (*Id.* at 17–30.) After due consideration, the Court concludes that Plaintiff's § 1983 claims fail because Plaintiff fails to plausibly allege that Brown acted under color of law.

> A.    *Plaintiff fails to sufficiently allege that Brown acted "under color of law"*

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). To state a claim under § 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

"The Supreme Court has broadly interpreted the color of law requirement, concluding that 'misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken under color of state law.'" *United States v. Giordano*, 442 F.3d 30, 42–43 (2d Cir. 2006) (quoting *United States v. Walsh,* 194 F.3d 37, 50 (2d Cir. 1999) (internal quotation marks and alterations omitted)). "The fact that someone holds

an office or otherwise exercises power under state law does not mean, of course, that any wrong that person commits is 'under color of law.'" *Id.* at 43. "It is clear that under 'color' of law means under 'pretense' of law. Thus, acts of officers in the ambit of their personal pursuits are plainly excluded." *Screws v. United States,* 325 U.S. 91, 111 (1945). But as the Second Circuit has observed, "there is no bright line test for distinguishing personal pursuits from actions taken under color of law." *Giordano*, 442 F.3d at 43 (quoting *Pitchell v. Callan,* 13 F.3d 545, 548 (2d Cir. 1994).

"The color of law element may be satisfied by the fact that an official gains access to the victim in the course of official duty." *Id.*; *see also United States v. Livoti,* 196 F.3d 322, 327 (2d Cir. 1999) (rejecting sufficiency challenge to § 242 conviction where on-duty police officer choked victim who had protested officer's arrest of victim's brother); *United States v. McClean,* 528 F.2d 1250, 1252, 1255 (2d Cir. 1976) (holding that police officers acted under color of law when they stole and extorted proceeds of narcotics sales from suspects of their investigations). "But this is by no means a necessary condition: it is well-established that an official may act under color of law even when he or she encounters the victim outside the conduct of official business and acts for reasons unconnected to his or her office, so long as he or she employs the authority of the state in the commission of the crime." *Giordano*, 442 F.3d at 43; *see also Walsh,* 194 F.3d at 51 ("The relevant question . . . is not whether the actual abuse was part of the official's duties but, rather, whether the abuse was 'made possible only because the wrongdoer is clothed with the authority of state law.'" (citations omitted)); *Pitchell,* 13 F.3d at 548 ("[L]iability may be found where [an official], albeit off-duty, nonetheless invokes the real or apparent power of [his office].").

Here, Plaintiff alleges that Brown acted "under color of law" as a nurse for CCS, a private entity that WC and Spano employed to provide medical services to the inmates at the Jail. A private entity acts under color of state law for purposes of § 1983 when "(1) the State compelled the conduct [the 'compulsion test'], (2) there is a sufficiently close nexus between the State and the private conduct [the 'close nexus test' or 'joint action test'], or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State [the 'public function test']." *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014) (citations omitted). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Fabrikant v. French,* 691 F.3d 193, 207 (2d Cir. 2012) (quoting *Rendell–Baker v. Kohn,* 457 U.S. 830, 838 (1982)).

Here, even when construing the Complaint in the light most favorable to him, the Court concludes that Plaintiff has failed sufficiently allege that Brown acted under color of law. First, Brown is not subject to liability under § 1983 merely because she worked as a nurse for CCS at the Jail. *See Kern v. City of Rochester*, 93 F3d 38, 43 (2d Cir. 1996) ("Mere employment by a state or municipality does not automatically mean that a defendant's actions are taken under the color of state law." (citations omitted)).

Second, Plaintiff fails to allege how Brown, in violating his constitutional rights, exercised the alleged power she possesses by virtue of state law, if any, *see Monsky v. Moraghan*, 127 F.3d 243, 245 (2d Cir. 1997), or how she violated his rights under the pretense of law, *see Screws*, 325 U.S. at 111. The Complaint contains no allegations from which the Court could reasonably infer that Brown's position as a nurse at the Jail imbued her with some kind of authority over Plaintiff, and that she used such purported authority in violating his constitutional rights. Instead, the Complaint merely conclusorily alleges that Brown "abused [P]laintiff with her powers as a penal

medical provider." (Compl. ¶ 82.)  And while Plaintiff alleges that Brown threatened him with falsely telling her "powerful father" that he raped her, (*id.* ¶ 50), Plaintiff fails to allege, for example, what position or powers, if any, Brown's father had under color of law, and how exactly Brown's actions were somehow vicariously clothed under color of law through her father.

At best, Plaintiff alleges that Brown committed the alleged sexual abuse against him during her work hours and that she "had keys to rooms and access" to the entire Jail. (*Id.* ¶¶ 54, 135.) In other words, Plaintiff seems to allege that Brown's authority under color of law over him derived from her ease of access inside the Jail by virtue of her status as a nurse. But then again, such argument is merely a reformulation of saying that Brown acted under color of law merely because she worked as a nurse at the Jail. *See Kern*, 93 F3d at 43. This argument is insufficient because it still crucially fails to allege Brown was employing the authority of the state when she perpetrated the sexual abuse. *See Giordano*, 442 F.3d at 43.

To illustrate, if Brown's position were different and with potentially *even freer* access inside the Jail, such as janitorial services, for example, the result would still be the same because she would still not be exercising any authority derived from the state to perpetrate the sexual abuse. On the other hand, had Plaintiff alleged that Brown perpetrated the sexual abuse during a medical visit or examination, then she would have acted under color of law because she perpetrated the sexual abuse while exercising the power that the state granted her as a nurse at the Jail. *See, e.g.*, *West v. Atkins*, 487 U.S. 42, 55 (1988) ("By virtue of this relationship, effected by state law, Doctor Atkins is authorized and obliged to treat prison inmates, such as West.[] He does so "clothed with the authority of state law." (citations omitted)).

Put another way, the main difference is that in the latter example, Brown would be exercising her "state powers" as a nurse at the Jail because she can ostensibly "order" Plaintiff

under those circumstances, for instance, to undress for purposes of the medical checkup. In contrast, her mere access to the Jail by virtue of her status as a nurse does not imbue her with similar authority over Plaintiff to perpetrate the alleged sexual abuse. *Cf. Moraghan*, 127 F.3d at 245–46 ("The complaint does not allege the typical actions of a state judicial officer that would plainly fall within the ambit of actions taken under color of law. These would include actions taken in the course of presiding at a trial or rendering judgments. . . . In this case, however, the plaintiff alleges that the defendant was acting within the courthouse and, more importantly, was enabled to take the alleged actions only because of his judicial status. The allegations of the complaint would permit the plaintiff to prove that ordinary citizens were not permitted to bring their dogs into the Clerk's office (except for blind persons using seeing-eye dogs), that Judge Moraghan was known to, and deferred to by, personnel of the office, and that he was allowed to enter the office with his dog and remain there during the alleged episodes because he was a judge. Such proof would permit a finding that the Judge's alleged actions were taken under color of state law or authority.").

And third, to the extent that Plaintiff alleges Brown exerted "power" over him because he subjectively believed that, if she fulfilled her threats of false rape accusations, the Jail personnel would credit her statements over his solely by virtue of their respective positions (*i.e.*, her as a nurse and him as an inmate), his allegations would still fail. (Resp. in Opp'n at 7–8.) As the Second Circuit previously noted, reliance on a victim's subjective reaction "misses the essence of the color of law requirement." *Pitchell,* 13 F.3d at 548; *see also United States v. Temple*, 447 F.3d 130, 144–45 (2d Cir. 2006) (Wesley, J., concurring) ("Instead of considering a victim's subjective beliefs or fears, courts should remain focused on objective criteria, specifically, the defendant's status, the victim's objective and reasonable awareness of that status, and the defendant's use of the victim's awareness to accomplish the harm.").

Even when construing the Complaint in the light most favorable to him, the Complaint is devoid of any objective allegations from which the Court could reasonably infer that Plaintiff's subjective beliefs are justified. It is not as if Plaintiff alleged any facts suggesting that Jail personnel would credit Brown's statements over his, or that they would fail to credit his statements regardless of whether Brown made any statement. If anything, the opposite is true.

For example, Plaintiff alleges that on October 13, 2017, when Brown allegedly sexually abused him for the last time inside the Staff Room in the Jail, Sergeant Deltresse began knocking on the door that Brown had barricaded and then forced it open. (Compl. ¶¶ 58–59.) After finding Plaintiff and Defendant by themselves inside the Staff Room, Sergeant Deltresse then approached Correction Officer Levi and demanded to know why Brown was alone with Plaintiff. (*Id.* ¶ 61.) As such, when drawing all inferences in his favor, Plaintiff seems to allege that Sergeant Deltresse found the interaction between Brown and Plaintiff unusual and suspicious because it was behind a barricaded door inside the Staff Room where Plaintiff was working as a porter instead of, say, behind a closed door on the second floor where Brown worked. But significantly, Plaintiff did not allege that, despite the circumstances, either Sergeant Deltresse or Correction Officer Levi directly ask Brown if everything was alright, express concern about Brown's safety, or even accuse Plaintiff of rape or of some other inappropriate behavior that could be inferred from finding Plaintiff and Brown behind a barricaded door in a room where Plaintiff was working. Rather, Plaintiff's allegations themselves suggest that Jail personnel found *Brown's* behavior suspicious, for which plausibly she was subsequently terminated. (*Id.* ¶ 66.)

Accordingly, because Plaintiff has failed to sufficiently allege that Brown acted under color of law, the Court dismisses all § 1983 claims against Brown.

> B.      *Plaintiff's remaining claims against the County Defendants fail for lack of an independent constitutional violation.*

As the Court concludes that Brown did not act under color of law, the Court must also dismiss all of Plaintiff's remaining claims under § 1983 against the County Defendants. "Second Circuit case law holds that where [an individual] did not act under color of law, the injury inflicted on the victim" is only a private tort. *Claudio v. Sawyer*, 675 F. Supp. 2d 403, 410 (S.D.N.Y. 2009), *aff'd*, 409 F. App'x 464 (2d Cir. 2011) (citing *Pitchell*, 13 F.3d at 549.)  "Without a state actor, there can be no 'independent constitutional violation.'" *Id.* "If there is no 'independent constitutional violation,' a *Monell* claim against [a municipality] will necessarily fail." *Id.* (citing *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006); *Pitchell*, 13 F.3d at 549); *see also Forney v. Forney,* 96 F. Supp. 3d 7, 13 (E.D.N.Y. 2015) ("[T]here can be no failure to intervene claim without a primary constitutional violation.").

That is the case here. All of Plaintiff's remaining claims against the County Defendants are premised (and strictly dependent) on Plaintiff's alleged sexual abuse by Brown. (*See, e.g.*, Compl. at 15 (failure to intervene); *id.* at 16 (Fourteenth Amendment, Substantive Due Process); *id.* at 17 (supervisory liability); *id.* at 21 (*Monell*).) But because Brown did not act under color of law, then there is no independent constitutional violation on which to premise the claims against the County Defendants—rather, only a private tortious act. As "a jurisdictional requisite for a § 1983 action" is that the plaintiff must be harmed by acts committed under color of law, *Polk Cnty. v. Dodson*, 454 U.S. 312, 315 (1981), the Court dismisses all of Plaintiff's remaining § 1983 claims against the County Defendants.

At best, Plaintiff may have a plausible claim against the County Defendants on a negligence theory if Plaintiff's allegations of sexual abuse by Brown are true. But without an underlying, independent constitutional claim, such theory would have to be asserted as a state claim under state

14

law. *See, e.g., Bonsignore v. City of New York,* 683 F.2d 635 (2d Cir. 1982) (holding that police officer who seriously wounded his wife and then committed suicide with his police handgun was not acting under color of law for purposes of § 1983 but upholding jury verdict that the City was liable in negligence). Notwithstanding, as already explained above, such state law claims against the County Defendants are already time-barred.

### V.   The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, if any, against Brown

"The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). With the dismissal Plaintiff's § 1983 claims against all Defendants, there remains no independent jurisdictional basis for his remaining state law claims, if any,[4] against Brown. *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims"). In addition, where the federal claims are dismissed at an early stage in the litigation, the Second Circuit has generally held that it is inappropriate for the district court to exercise supplemental jurisdiction. *See, e.g., Giordano v. City of New York,* 274 F.3d 740, 754 (2d Cir. 2001); *Seabrook v. Jacobson,* 153 F.3d 70, 72 (2d Cir. 1998); *Castellano v. Bd. of Trs. of Police Officers' Variable Supplements Fund,* 937 F.2d 752, 758 (2d Cir. 1991). Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, if any, against Brown.

Therefore, the Court dismisses the entirety of Plaintiff's Complaint.

---

[4] As mentioned above, in certain paragraphs within his Complaint, Plaintiff purports to assert claims under state law against all Defendants; yet, he fails to explicitly assert any such claims.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the County Defendants' motion to dismiss (ECF No. 34) and DISMISSES Plaintiff's Complaint. Specifically, the Court DISMISSES Plaintiff's state law claims against the County Defendants with prejudice, and all other remaining claims against all Defendants without prejudice. Plaintiff is granted leave to file an Amended Complaint as to his claims that were dismissed without prejudice. If Plaintiff chooses to do so, he will have until May 2, 2022 to file an Amended Complaint. Defendants are then directed to answer or otherwise respond by June 1, 2022. If Plaintiff fails to file an Amended Complaint within the time allowed, and he cannot show good cause to excuse such failure, any claims dismissed without prejudice by this opinion and order will be deemed dismissed with prejudice. The Clerk of Court is directed to terminate the motion at ECF No. 34.

Dated: March 15, 2022
      White Plains, NY

SO ORDERED:

NELSON S. ROMÁN
United States District Judge